UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL D. ALLISON,<br><br>      Plaintiff,<br><br>   v.<br><br>CITY OF BRIDGEPORT, IL, a municipality in Lawrence County, MAX SCHAUF, individually and in his capacity as Mayor of Bridgeport, ROBERT NESTLEROAD, individually and in his capacity as Chief of Police of Bridgeport, DANNY ASH, individually and in his capacity as police officer and acting Chief of Police of Bridgeport; TORY GARRARD, individually and in his capacity as owner of Garrard Towing and Repair, the designated towing agent for Bridgeport,<br><br>      Defendants. | Case No. 05-cv-4206-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 6) filed by defendants City of Bridgeport ("Bridgeport"), Max Schauf ("Schauf"), Robert Nestleroad ("Nestleroad") and Danny Ash ("Ash") (collectively, "municipal defendants"). Plaintiff Michael D. Allison ("Allison") has responded to the motion (Doc. 7).

**I.    Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Brown*, 398 F.3d at 908-09; *Holman*,

211 F.3d at 405.  "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate."  *Brown*, 398 F.3d at 909 (internal quotations omitted);  *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

**II.     Facts Alleged**

Allison's complaint alleges the following facts.

Plaintiff Allison is a resident of Bridgeport, Illinois, who enjoys fixing up vintage cars. Allison's hobby got him into some trouble when, in June 2001, Bridgeport decided to enforce a city ordinance ("Abandoned Vehicle Ordinance") requiring all vehicles kept in yards or driveways in the city to be registered with the state.  The Abandoned Vehicle Ordinance allowed Bridgeport to impose a fine of $75 to $500 per day if a violator did not remove unregistered cars from his property within ten days of receiving notice;  it did not authorize Bridgeport to tow offending vehicles.  The passage of the Abandoned Vehicle Ordinance was supported by a City Counsel finding that junk and disabled vehicles on residential property pose a threat to the health, safety and well-being of Bridgeport residents.  In June 2001, Bridgeport notified Allison that if he did not register the three inoperative vintage cars on his property with the Illinois Secretary of State, it would fine him.  Allison registered two of the three cars and moved the third car, which belonged to his brother, to a storage facility.

Two years later, in May 2003, Bridgeport again notified Allison that he needed to register two inoperable vintage cars on his property.  This time Allison refused, expecting to be issued a ticket and to be given an opportunity to contest the legitimacy of the Abandoned Vehicle Ordinance.  Instead, in August 2003, Bridgeport sent Allison a letter warning him that if he did not show proof of his cars' registration within ten days, his cars would be towed.  Allison did not

register the cars, and on November 10, 2003, defendant Tory Garrard ("Garrard"), acting at Bridgeport's direction, towed Allison's cars from his property to Garrard's impound lot, where they were held until Allison's mother paid to have the cars registered and redeemed from the impound lot ten days later.  Bridgeport officials had not obtained a warrant to seize Allison's cars, had not issued a ticket to Allison for violation of the Abandoned Vehicle Ordinance, and did not offer Allison the opportunity for a hearing before or after it caused his cars to be towed. In addition, in towing Allison's cars, Garrard damaged the cars and Allison's real property.

The issue arose again two years after that.  On June 15, 2005, Bridgeport notified Allison that he needed to register the two vintage cars in his driveway.  Allison had not done so within two weeks, so Garrard, still acting at Bridgeport's direction, towed one of the cars to his impound lot on June 28 and the other on June 29.  Garrard held the cars until July 5, 2005, when Allison paid to redeem the cars and presented proof that he planned to move them outside the city limits.  As in May 2003, Bridgeport officials had not obtained a warrant to seize Allison's cars, had not issued a ticket to Allison for violation of the Abandoned Vehicle Ordinance, and did not offer Allison the opportunity for a hearing before or after it caused his cars to be towed. Again, in towing Allison's cars, Garrard damaged the cars and Allison's real property.

During the times Bridgeport was enforcing the Abandoned Vehicle Ordinance against Allison, it allowed other Bridgeport residents to maintain unregistered cars on their property in violation of the ordinance.  Furthermore, at all relevant times, Allison's vehicles that were towed were clean, closed, locked and secure and did not pose any more of a threat to the health, safety or well-being of Bridgeport residents than a registered vehicle did.

In November 2005, Allison filed this multi-count lawsuit under 42 U.S.C. § 1983 against Bridgeport, Schauf, the mayor of Bridgeport during all relevant times and the one who directed

3

the police to enforce the Abandoned Vehicle Ordinance, Nestleroad, the police chief who sent the notices to Allison in 2001 and 2003, Ash, the acting police chief who sent the notice to Allison in 2005, and Garrard, who Allison believes was acting as an agent of Bridgeport in towing and impounding his cars. The complaint is not a model of clarity, often repeating the same information and allegations multiple times. Nevertheless, the Court is able to discern the following claims:

- Count I, pled against Bridgeport, contains Fourteenth Amendment substantive and procedural due process claims challenging the rationale for adopting the Abandoned Vehicle Ordinance and the adequacy of the notice and procedures it affords to potential violators. It also alleges that the Abandoned Vehicle Ordinance violates the Eighth Amendment because the fines allowed are excessive, the Fourteenth Amendment because they are arbitrary and capricious in that they are left to the unbridled discretion of Bridgeport officials, and the Fifth Amendment because it amounts to a taking without just compensation. Count I also alleges that the warrantless seizures of Allison's cars violated his Fourth Amendment right to be free from unreasonable seizures and that the selective enforcement of the Abandoned Vehicle Ordinance against him violates the Fourteenth Amendment's equal protection clause.

- Count II, pled against Bridgeport, reiterates some of the same claims pled in Count I, and adds the allegation that Bridgeport's enforcement of the Abandoned Vehicle Ordinance against him has deprived him of the artistic and expressive "right to the quiet enjoyment of leisure activities in his or her own home" embodied in the First, Fourth, Fifth, Eighth and Fourteenth Amendments.

- Counts III and IV, pled against Schauf, repeat Allison's First, Fourth, Fifth and Fourteenth Amendment.

- Counts V and VI, pled against Nestleroad, assert Fourteenth Amendment due process claims challenging the adequacy of the notices Allison received in 2003 and 2005 and repeat Allison's First, Fourth, Fifth and Fourteenth Amendment prior claims.

- Counts VII and VIII, pled against Garrard, allege that Garrard violated Allison's Fourth Amendment rights by seizing his cars without a warrant and violated his Fourteenth Amendment procedural due process rights and repeat Allison's First, Fourth, Fifth and Fourteenth Amendment prior claims.

- Counts IX and X, pled against Ash, repeat the same claims made against Nestleroad, but with respect to the 2005 events only.

- Count XI purportedly seeks a declaratory judgment and injunctive relief under the same theories already pled in Counts I through X. However, since such relief was requested in Counts I through X, Count XI adds nothing to Allison's complaint and need not be considered a separate cause of action.

The municipal defendants ask the Court to dismiss this case on the grounds that, as a matter of law, automobile owners are not entitled to a pre-deprivation hearing before their illegally parked vehicles can be towed. Allison has responded, noting that his procedural due process claims form only a very small part of his complaint and pointing out that his complaint is the lack of *any* hearing, not necessarily a pre-deprivation hearing. Allison is right that he has attempted to plead many claims in addition to his procedural due process claims. The Court construes the pending motion to be a request to dismiss only Allison's procedural due process claims against the municipal defendants.

### III. Analysis

Allison has sufficiently pled a Fourteenth Amendment procedural due process violation against the municipal defendants. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. 14. This clause encompasses three types of protection, one of which is the guarantee of fair procedure, often referred to as "procedural due process." *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990). The pending motion addresses Allison's claims that he was not provided fair procedures when he was given no opportunity for a hearing either before or after his cars were towed.

In order to plead a due process claim, a plaintiff must allege (1) that the interest allegedly lost was a protected property or liberty interest under the Fourteenth Amendment, (2) that "the alleged loss . . . amounted to a deprivation," and (3) that the deprivation was without due process

of law. *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989) (citing *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In this case, the municipal defendants do not contest that Allison was deprived, at a minimum, of a protected property interest in the possession of his cars. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982). Thus, the critical question is whether he was provided due process of law in the procedures that were afforded him in conjunction with the deprivation.

Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972); *accord Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). However, a "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty*, 75 F.3d at 323. A state may provide due process of law before or after the deprivation. Even if a person is deprived of a protected liberty or property interest under color of state law, there is no constitutional violation if the state provides an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 538; *Daniels*, 474 U.S. at 339-40 (Stevens, J., concurring). Whether a remedy is adequate requires a balancing of the interests involved:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). A complaint that lacks a colorable challenge to the validity of state procedures has not alleged a constitutional violation. *Daniels*, 474 U.S. at 339 (Stevens, J., concurring) ("[W]hen a predeprivation hearing is clearly not feasible, when the regime of state tort law provides a constitutionally unobjectionable system of recovery for the

deprivation of property or liberty, and when there is no other challenge to the State's procedures, a valid § 1983 claim is not stated.").

The municipal defendants point to *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), in support of their argument that due process does not require a pre-deprivation hearing before illegally parked cars can be towed. At issue in *Sutton* were laws that authorized towing of illegally parked cars without a prior hearing in non-emergency conditions, for example, where the car is not blocking traffic. *Id.* at 644-45. The Court of Appeals applies the *Mathews* balancing test and found that a pre-deprivation hearing was not necessary where adequate post-deprivation remedies existed. *Id.* at 645-46.

While *Sutton* may be interesting reading and may, at some point, be pertinent to this case, it is a red herring now. Allison is not necessarily contending that a *pre-deprivation* hearing must be held, which was the issue in *Sutton*. Instead, he complains that *no hearing at all* was provided, either before or after the towing. Thus, he had no "opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty*, 75 F.3d at 323. In the context of the facts alleged in this case, the lack of any opportunity to be heard is sufficient to establish the lack of due process, and Allison therefore has stated a claim for a procedural due process violation.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the municipal defendants' motion to dismiss (Doc. 6).

**IT IS SO ORDERED.**
**DATED:  June 8, 2006**

              s/ J. Phil Gilbert
              **J. PHIL GILBERT**
              **DISTRICT JUDGE**